## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HASKELL G. GREER, et al.,

|  |  |
|---|---|
|  | Case No. 15-12444 |
| Plaintiffs, | HON. JUDITH E. LEVY |
| v | Mag. Judge Elizabeth A. Stafford |

CITY OF HIGHLAND PARK, et al.,

Defendants.

_____

SEIKALY, STEWART & BENNETT, P.C.
Jeffrey T. Stewart (P24138)
30445 Northwestern Highway, Suite 250
Farmington Hills, MI 48334
(248) 785-0102
jts@sslawpc.com

ELIZABETH A. DOWNEY, P.C.
Elizabeth A. Downey (P37036)
30445 Northwestern Highway, Suite 250
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com
*Attorneys for Plaintiffs*

JAMES W. MCGINNIS, P.C.
James W. McGinnis (P29323)
985 E. Jefferson Ave., Ste. 100
Detroit, MI 48207
(313) 446-9582
*Counsel for Defendants*

_____

## MOTION TO ENFORCE SETTLEMENT AND TO ASSESS COSTS

NOW COME plaintiffs, by their attorneys and move for an order enforcing

the settlement that was placed on the record on August 29, 2018, and assessing

costs against the defendants for refusing to go forward with the settlement

agreement in the absence of any good faith excuse.  In addition, plaintiffs request approval of the proposed settlement agreement attached as Exhibit 1, an order for defendants to execute it, and an order to either immediately produce the overdue first payment or pay 6% interest on the overdue payment.  In support of the motion, plaintiffs state as follows:

1.     This is an action claiming violation of the plaintiffs' civil rights by the defendants with related claims also included.

2.     At a Court-ordered settlement conference on August 29, 2018, the parties reached an agreement by which the defendants would be required to pay $110,000 in three installment payments.  The payments were to be made on October 15, 2018 and February 15 and May 15, 2019.

3.     Defendants' counsel agreed to produce a first draft of the settlement agreement.  To date, no draft has been received.  When Plaintiffs' counsel asked why, he was advised that Defendants' counsel believed that he was not authorized to agree to part of the settlement that reserved the right to collect the settlement sums from the individual Defendants or reinstate the case against them if the City failed to make the payments.   The October 15 deadline has passed without the City making the first installment payment.

4.     The settlement proceeds were to be paid entirely by the City of Highland Park.  But because the City had consistently pled poverty and threatened

2

to go bankrupt as a way of avoiding liability on the claim, Plaintiffs were concerned about releasing the individual Defendants until all payments due from the City had been paid.

5.     Consequently, plaintiffs specifically reserved the right in the settlement that was placed on the record to reinstate the claim against all of the Defendants, including the individuals, if the City of Highland Park failed to make all payments due under the agreement.

6.     There was extensive discussion of this issue on the record, as reflected in the transcript of the hearing, which is attached hereto as Exhibit 2. Pertinent portions are highlighted.

7.     The transcript makes it crystal clear that the individuals would not be released and that the entire case could be reinstated, for the purpose of enforcing the settlement against all Defendants, jointly and severally, if there was a default in the payment of the settlement proceeds.

8.     The settlement was subject to Highland Park City Council approval, but it was represented to the Court that Ms. Kathy Square was in Court with authority to speak for the City Council[1].  To the best of Plaintiffs' knowledge, the Council did approve the City's participation in settlement.

---

[1] 15 MR. McGINNIS: Your Honor, I have with me today Miss
16 Kathy Square who's the City Administrator for the City of
17 Highland Park and she has authority to enter into a Settlement
18 Agreement.

9.     After agreeing to the settlement on behalf of all Defendants, counsel for Defendants has now informed counsel for Plaintiffs that he had no authority when the settlement was placed on the record to state that the individuals would be subject to reinstated claims in the event of default by the City.

10.     No such lack of authority was expressed at the time that the settlement was placed on the record, nor did the City reserve the right to disapprove the settlement on the basis of the rights of the individuals, as distinguished from the rights of the City itself.  Moreover, a high-ranking official from the City, Ms. Kathy Square, was present and participated in settlement negotiations with the Court.  At no time was there any qualification on the proposed settlement having to do with a requirement that the individuals be released prior to the time that the last settlement payment was made.

11.     Prior to filing this motion, it is been served on the Defendants, along with Exhibits 1 (a draft settlement agreement) and 2 (showing that Plaintiffs' characterization of the settlement as placed on the record is accurate).  That notwithstanding, concurrence in the motion has been refused

WHEREFORE, plaintiffs request the following relief:

a.          that the Court find that the settlement agreement placed on the record expressly allowed Plaintiffs to reinstate all claims against all

_____

(Ex. 2, Transcript, p 3)

4

defendants, including individual Defendants, in the event that the City failed to pay the settlement amount as specified;

        b.        that the Court further find that counsel for the Defendants never reserved the right to revoke the agreement or refuse to go forward with it on the basis that he lacked authority to bind the individuals;

        c.        that the Court approve Exhibit 1 as the correct and accurate written form of the agreement put on the record and order Defendants to promptly execute it;

        d.        that the Court order the City to immediately issue and forward to Plaintiffs' counsel a check for the first installment payment or pay 6% interest;

        e.        that the Court enforce the agreement between the parties and assess costs and attorney fees against the Defendants for requiring that this motion be filed.

                          SEIKALY STEWART & BENNETT, P.C.
                          Attorneys for plaintiffs

                          By: _/s/  Jeffrey T. Stewart_____
                          JEFFREY T. STEWART (P24138)
                          30445 Northwestern Highway, Ste. 250
                          Farmington Hills, MI 48334
                          (248) 785-0102

Dated:  October 30, 2018

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

HASKELL G. GREER, et al.,

             Plaintiffs,

v

CITY OF HIGHLAND PARK, et al.,

             Defendants.

Case No. 15-12444
HON. JUDITH E. LEVY
Mag. Judge Elizabeth A. Stafford

---

SEIKALY, STEWART & BENNETT, P.C.
Jeffrey T. Stewart (P24138)
30445 Northwestern Highway, Suite 250
Farmington Hills, MI 48334
(248) 785-0102
jts@sslawpc.com

ELIZABETH A. DOWNEY, P.C.
Elizabeth A. Downey (P37036)
30445 Northwestern Highway, Suite 250
Farmington Hills, MI 48334
(248) 539-7407
attylizdowney@aol.com
*Attorneys for Plaintiffs*

JAMES W.  MCGINNIS, P.C.
James W. McGinnis (P29323)
985 E. Jefferson Ave., Ste. 100
Detroit, MI 48207
(313) 446-9582

*Counsel for Defendants*

---

# BRIEF IN SUPPORT OF PLAINTIFFS'
# MOTION TO ENFORCE SETTLEMENT AND TO ASSESS COSTS

# I.    TABLE OF CONTENTS

II.    Questions Presented …………………………………………….    ii

III.    Index of Authorities …………………………………………….    iii

IV.    Facts …………………………………………………………    1

V.    Argument …………………………………………………….    1

      A.    Standards for Decision ………………………………    1

      B.    The Unambiguous Terms Should be Enforced ……..    1

      C.    Enforcement Powers ………………………………...    3

      D.

VI.    Conclusion …………………………………………………..    4

## II.   QUESTIONS PRESENTED

1.   Should the Court enforce the settlement on the terms set forth on the record?

Plaintiffs say "yes"
Defendants say "no"

Authority: *RE/Max Intern., Inc. v. Realty one, Inc.,* 271 F.3d 633 (6th Cir. 2001)


2.   Is lack of actual authority a proper reason to refuse to perform a settlement or

to decline to enforce a settlement on the terms set forth on the record?

Plaintiffs say "no"
Defendants say "yes"

Authority:  *Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525 (6th Cir. 1986).


3.   Should the Court award costs and attorney fees as well as enforce the agreement?

Plaintiffs say "yes"
Defendants say "no"

Authority:  *Jaynes v. Austin,* 20 Fed.Appx. 421, 426-427 (6th Cir. 2001).

## III.  INDEX OF AUTHORITIES

**<u>Cases</u>**                                                                      **<u>Page</u>**

*Capital Dredge & Dock Corp. v. City of Detroit*,
800 F.2d 525 (6th Cir. 1986)…………………………………………….   2

*Jaynes v. Austin,* 20 Fed.Appx. 421 (6th Cir. 2001)……………………..   3, 4

*RE/Max Intern., Inc. v. Realty one, Inc.,* 271 F.3d 633 (6th Cir. 2001)…..   1

## IV. FACTS

The facts are simple: the parties reached a settlement, which was put on the record.  The record shows that Defendants' counsel was to draft the agreement memorializing the settlement.  He has not done so, claiming that he has discovered that he had no authority from the individual Defendants to agree to one of the terms of the settlement.  Moreover, the settlement put on the record required the City to pay the first installment by October 15.  It has failed to do so.

Plaintiffs ask the Court to enforce the settlement put on the record.

## V.  ARGUMENT

### A.    Standards for Decision

The Court has inherent authority (and jurisdiction) to enforce a settlement put on the record.  *RE/Max Intern., Inc. v. Realty one, Inc.,* 271 F.3d 633, 641 (6th Cir. 2001).  Indeed:

> Summary enforcement of a settlement agreement for which there is no dispute as to the terms of the agreement is the only appropriate judicial response, absent proof of fraud or duress.

*Id. at* 650.  If the terms are unambiguous, no hearing is required.  *Id. at* 646.

### B.    The Unambiguous Terms Should be Enforced

The Court and the parties were careful to make the record clear as to the terms.  Exhibit 2 is not ambiguous.  Nor is there any proof of fraud or duress. Thus, the terms should be enforced.

1

It appears that Defendants' only reason for refusing to perform the agreement is that they believe the attorney agreed to a specific condition without authority from the individual Defendants.   This, however, is not a recognized reason to refuse to enforce a settlement put on the record:

> Generally, when a client hires an attorney and holds him out as counsel representing him in a matter, the client clothes the attorney with apparent authority to settle claims connected with the matter. *See Terrain Enterprises, Inc. v. Western Casualty & Surety Co.,* 774 F.2d 1320 (5th Cir.1985); *Bergstrom v. Sears, Roebuck & Co.,* 532 F.Supp. 923 (D.Minn.1982); *Walker v. Stephens,* 3 Ark.App. 205, 626 S.W.2d 200 (1981); *Hutzler v. Hertz Corp.,* 39 N.Y.2d 209, 383 N.Y.S.2d 266, 347 N.E.2d 627 (1976); *cf. Sustrik v. Jones & Laughlin Steel Corp.,* 189 Pa.Super. 47, 149 A.2d 498 (1959); *Rader v. Campbell,* 134 W.Va. 485, 61 S.E.2d 228 (1949). *But see Blanton v. Womancare, Inc.,* 38 Cal.3d 396, 696 P.2d 645, 212 Cal.Rptr. 151 (1985). Thus, a third party who reaches a settlement agreement with an attorney employed to represent his client in regard to the settled claim is generally entitled to enforcement of the settlement agreement even if the attorney was acting contrary to the client's express instructions. In such a situation, the client's remedy is to sue his attorney for professional malpractice. The third party may rely on the attorney's apparent authority unless he has reason to believe that the attorney has no authority to negotiate a settlement.

*Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530–31 (6th Cir. 1986).   There is no legal excuse for failure to perform as promised.   This is particularly true with regard to the City, which has not claimed any disapproval of the conditions but has still failed to make the required payment.

## C.     Enforcement Powers

In order to enforce the settlement, Plaintiffs ask the Court to declare that Exhibit 1 fairly memorializes the agreement put on the record, and order Defendants to sign it.  The Sixth Circuit has declared that it is within the power of the District Court to order a party to sign a settlement agreement.  *Jaynes v. Austin,* 20 Fed.Appx. 421, 426-427 (6th Cir. 2001).

Next, Plaintiffs ask the Court to require the City (which has no objection to the settlement) to immediately remit the overdue installment to Plaintiffs' counsel or pay 6% interest.  Without the threat of interest, the City apparently will not comply with its obligation.

Next, the Plaintiffs request costs and attorney fees for having to file this motion and brief.  According to the Sixth Circuit, the District Court has the power to order costs and attorney fees against a party for bad faith or oppressive litigation practices.  *Jaynes, supra at* 427.  In *Jaynes, supra,* the Sixth Circuit approved the award of costs and attorney fees against a party who proffered the settlement sum, but with an extra term put into the written agreement.  The District Court refused to allow the existing oral agreement to be changed unilaterally, and awarded costs and attorney fees against the party who tried to change the agreement.  According to the Sixth Circuit:

> Although the district court did not use the phrase "3illfully abuse the judicial process," it did conclude that Defendant attempted to

> "obstruct" and "delay" resolution of the action. We find that to be a
> sufficient discretionary finding of bad faith to justify an award of
> attorney fees.

*Jaynes, supra at* 427.  Here, the Defendants have refused to produce the written

agreement and refused to make the first payment by deadline because they want a

term deleted – a term that specifically addresses the very failure to make payment

that has occurred.  Under *Jaynes, supra,* this constitutes bad faith or oppressive

litigation tactics.  Because of these tactics, plaintiffs have had to pay for a

transcript of the settlement, and research and produce a motion and brief.

Plaintiffs and their counsel should be compensated for this unnecessary expense

and work.

## VI.  CONCLUSION

Plaintiffs' fears have come to pass: despite a settlement put on the record,

the Defendants continue to dodge and delay.  Plaintiffs respectfully request the

Court to put a firm stop to the gamesmanship by holding the Defendants to their

agreement and imposing penalties for the dodging and delaying.

SEIKALY STEWART & BENNETT, P.C.
Attorneys for plaintiffs

By:  /s/  Jeffrey T. Stewart
JEFFREY T. STEWART (P24138)
30445 Northwestern Highway, Ste. 250
Farmington Hills, MI 48334
(248) 785-0102

Dated:  October 30, 2018

4

## Certificate of Service

Diane Wos hereby certifies that on October 30, 2018 she served the foregoing notice on all counsel of record by filing same in the Court's ECF system which will automatically serve all counsel of record.

/s/Diane Wos
Diane Wos

gref105.docx

5

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This agreement is a memorialization of the settlement put on the record before the Hon. Elizabeth A. Stafford on August 29, 2018 in the case of *Greer et al v. City of Highland Park et al.,* U.S. District Court for the Eastern District of Michigan, Case No. 15-12444.

The parties to the agreement are: Haskell G. Greer, Kim R. Greer, Ashley Greer, Catera B. Greer, Kailaa Greer, and Alexander J. Lawrence (collectively, "the Plaintiffs") and the City of Highland Park, Chief Keven Coney, Sergeant Ronald Dupuis II, William Melendez, Brian Shafer, Eric Taylor, Charles Gardner, Jeremiah Hall, James McMahon, Hollis Smith, Allison Askia, Christopher Zeullig, Tyrell White, and Heather Holcomb (collectively, "the Defendants").

IT IS AGREED:

1.      The City of Highland Park will pay the Plaintiffs a total of $110,000.00 (One Hundred and Ten Thousand and No/100 Dollars).  These sums shall be paid in two equal installments of $36,666.67 due on October 15, 2018 and February 15, 2019.  The third installment of $36,666.66 shall be due on May 15, 2019.  All sums shall be remitted to the offices of Seikaly, Stewart & Bennett, P.C. by the due date.

2.      In the event that any installment is not paid by its due date, Plaintiffs have the option of seeking enforcement by the Court according to the terms of this agreement, or reinstating the case to enter a judgment.  In doing so, Plaintiffs may seek collection from any or all of the Defendants as joint and several tortfeasors.  All sums collected shall not exceed $110,000.00 (One Hundred and Ten Thousand and No/100 Dollars), plus any interest, costs, or attorney fees ordered by the Court.  If the Plaintiffs elect reinstatement of the case, the parties agree to waive any statutes of limitation, which they agree to consider tolled while this agreement is in effect.

3.      When all payments have been made, Plaintiffs agree to enter a dismissal with prejudice and without costs.

4.      This agreement may not be modified except in a writing signed by both sides.

5.      This agreement shall be interpreted under Michigan law.


_____          _____

For the Greer Plaintiffs                                               Date


_____          _____

Alexander Lawrence                                               Date


_____          _____

For Defendants                                               Date

# EXHIBIT 2

1    UNITED STATES DISTRICT COURT

2    FOR THE EASTERN DISTRICT OF MICHIGAN

3    SOUTHERN DIVISION

4

5    HASKELL G. GREER, KIM R. GREER
     ASHLEY GREER, CATERA B. GREER,
6    KAILAA GREER, and ALEXANDER J.
     LAWRENCE,
7
                    Plaintiffs,                Case No.  15-12444
8
          -vs-                                 Detroit,  Michigan
9

10   CITY OF HIGHLAND PARK, a Municipal
     Corporation, HIGHLAND PARK POLICE
11   DEPARTMENT, CHIEF KEVIN CONEY,
     SERGEANT RONALD DUPUIS II,
12   WILLIAM MELENDEZ, BRIAN SHAFER,
     ERIC TAYLOR, CHARLES GARDNER,
13   JEREMIAH HALL, JAMES MCMAHON,
     HOLLIS SMITH, ALLISON ASKIA,
14   CHRISTOPHER ZEULLIG, TYRELL WHITE,
     and HEATHER HOLCOMBE,                     August 29, 2018
15
                    Defendants.
16   _____/

17        TRANSCRIPT OF SETTLEMENT CONFERENCE HEARING

18        BEFORE THE HONORABLE ELIZABETH A. STAFFORD

19        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

20

21   APPEARANCES:

22

23   For the Plaintiffs:              **Jeffrey T. Stewart**
                                      Seikaly Stewart & Bennett P.C.
24                                    30445 Northwestern Highway,  Suite 250
                                      Farmington Hills, MI 48334
25

1    APPEARANCES CONTINUED:

2

3    For the Defendants:                    **James W. McGinnis**
                                            985 E. Jefferson Avenue, Suite 100
4                                           Detroit, MI 48207

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23                  TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING
                    TRANSCRIBER NOT PRESENT AT LIVE PROCEEDINGS
24

25

1          Detroit, Michigan

2          Wednesday,  August 29, 2018

3          (At about 12:57 p.m.)

4                    - - - -

5          (Call to Order of the Court)

6          THE CLERK OF THE COURT: The Court calls case number

7   15-12444, Haskell G. Greer, et al versus City of Highland Park,

8   et al.  Counsel, please state your appearances.

9          MR. STEWART:  Good afternoon, Your Honor.  Jeffrey

10  Stewart appearing on behalf of Plaintiffs.

11         MR. McGINNIS:  May it please the Court.  James

12  McGinnis appearing on behalf of Defendants.

13         THE COURT: Good afternoon.  Mr. McGinnis, who is here

14  with you today?

15         MR. McGINNIS:  Your Honor, I have with me today Miss

16  Kathy Square who's the City Administrator for the City of

17  Highland Park and she has authority to enter into a Settlement

18  Agreement.

19         THE COURT: Thank you. Mr. Stewart, who is with you

20  today?

21         MR. STEWART:  With me today is Mr. Haskell Greer.

22         THE COURT: Speak into the microphone please because

23  this is being recorded.

24         MR. STEWART:  Mr. Haskell Greer is here on behalf of

25  everyone on the Plaintiff's side of the caption with the

1  exception of Alexander Lawrence who is here personally for his

2  own interests. However, the Agreement that we have been

3  discussing has included both of them, so it's inclusive of all

4  Plaintiffs.

5          THE COURT: And Mr. Greer has settlement authority on

6  behalf of the other Plaintiffs other than Mr. Lawrence?

7          MR. STEWART:  He does, Your Honor.  That would

8  include the minor child with the caveat that I expressed to the

9  Court off the record and that is that any minor settlement must

10  ultimately have Court approval.  But as far as it goes, he has

11  authority as Kailaa's father to make the overall deal and what

12  we will need Court approval on will be allocation from the

13  total net proceeds to the minor.

14          THE COURT: Okay.  The parties have been involved in

15  settlement discussions since about 10 a.m. this morning with

16  the assistance of the Court, is that true?

17          MR. STEWART:  It is, Your Honor.

18          THE COURT: Have the parties arrived at a settlement?

19          MR. STEWART:  We believe we have, Your Honor.

20          THE COURT: Who will placing the settlement, the terms

21  of the settlement on the record?

22          MR. STEWART:  Mr. McGinnis will do that.

23          MR. McGINNIS:  Again, Your Honor, James McGinnis on

24  behalf of the Defendants.  We've negotiated a settlement with

25  the Plaintiffs.  The terms of the settlement are as follows:

1        The lump sum or the total sum --excuse me -- is $110,000.

2    That sum will be paid over three installments.   The installment

3    dates, due dates are October the 15th, 2018, February 15th of

4    2019 and May the 15th of 2019.

5        As the Court is well aware that this settlement is entered

6    into on behalf of the City of Highland Park, a municipality and

7    only the City Council can bind the municipality to a contract,

8    so that this Settlement is subject to Council approval.   Miss

9    Kathy Square is with me today.   She has authorized me on behalf

10   of the City to enter into this Agreement.   It's our

11   understanding that the Council will meet some time in September

12   and we would then get word of whether or not they have approved

13   the Settlement.

14       We will enter into a Release and Settlement Agreement with

15   the Plaintiff which will incorporate the terms of the

16   settlement as put on the record.

17       The matter will be dismissed pursuant to the Settlement

18   Agreement, with the Plaintiff having the right to come back

19   before the Court and reopen the case should the -- there be a

20   breach of the Agreement, and the Court would reserve the right

21   to enforce the terms of the Agreement.

22          THE COURT:  Mr. Stewart, are those the terms that you

23   understand?

24          MR. STEWART:  As far as they go, yes, Your Honor.

25   I'm not in disagreement with anything that Mr. McGinnis has

 1   said, but I would like to add some clarification on a couple of

 2   points.

 3           THE COURT:  Okay.

 4           MR. STEWART:  One is that in the event of a breach,

 5   the understanding is that the Plaintiff would have the option

 6   of simply enforcing the Agreement according to its terms or

 7   reinstating the case with Statutes of Limitations have been

 8   tolled in the interim.  The Release Agreement would have to be

 9   subject within its own terms; that's saying that if there's a

10   breach, then the parties agree to set aside the Release and

11   allow the case to be reinstated in its entirety.  The overall

12   objective of this is to provide protection to the individual

13   Defendants by having them included in the settlement and the

14   release, but also preserve the Plaintiffs' rights against all

15   Defendants in the event the City was unable or unwilling to

16   live up to its obligations.

17       The other clarification I would add is that -- and as the

18   Court knows, the minor child has to have Court approval of the

19   amount of money that goes to that child.  We are unclear in our

20   own minds because this is a Federal Court matter, not a State

21   Court matter, I don't know whether we will seek approval from

22   this Court for that or whether we'll seek it from the Oakland

23   County Probate Court, but we will need approval from someone

24   for the amount of the money that is going to be allocated to

25   the child.  That in turn will require a conservatorship.  We

1   are not trying to make this Settlement conditioned on any of

2   that.  That will all happen some way or the other.  So we are

3   entering into the settlement in good faith today, but I

4   indicate to the Court that the minor's portion will be subject

5   to Court approval.

6           THE COURT: Thank you.  Mr. McGinnis.

7           MR. McGINNIS:  In my mind that presents somewhat of a

8   problem, Your Honor, because if Highland Park were to approve

9   this Settlement and pay out -- make two payments and default on

10  the third payment, then Plaintiff would have the option of

11  keeping the two payments, reopening the case and suing the

12  present Defendants and it's unclear to me should that occur

13  what would happen to the two payments already made, which is

14  why I believe that the Court would reserve the power to enforce

15  the terms of the Settlement and require Highland Park to make

16  the third payment as opposed to giving Plaintiff another bite

17  at the apple in terms of using the money that Highland Park has

18  paid to pursue a Judgment against it, so --

19          THE COURT: I will say, Mr. McGinnis, this is a new

20  interpretation of our discussion that I didn't anticipate.

21  What I understood was that the dismissal -- that the parties

22  would enter into dismissal, but if Highland  Park did not

23  fulfill its obligations under the Agreement, that the

24  Plaintiffs would retain the right to reopen the case and

25  frankly, it's not something -- you're talking about a partial

1  payment has been made.  I also heard Mr. Stewart say that the

2  options would be whether to enforce -- seek enforcement of the

3  settlement amount or to reopen the case.  If it's a matter of

4  forcing Highland Park to pay the balance --

5          MR. McGINNIS:  (Interjecting) We have no problem --

6          THE COURT: (Interjecting) I think that's something

7  that -- I think the usual terminology is that the Court retains

8  jurisdiction to enforce the Judgment.  I think, Mr. Stewart,

9  that that is what you were saying.

10          MR. STEWART:  Well, Your Honor, if the Court recalls

11  what we were concerned about is this, and I'm not suggesting

12  that anybody in this room is not acting in good faith.  I'm

13  sure that when Mr. McGinnis says here is what he intend to do

14  and Miss Square is there and ready to agree to that, that's

15  what they believe and I'm not challenging that.  Circumstances

16  can change.

17      Let's suppose for a moment that before the final payment

18  was made, that the City of Highland Park was perhaps forced

19  into bankruptcy without its (Inaudible) or did use (Inaudible).

20  I don't know that this Court would have the power to disregard

21  that bankruptcy and make the City make that final payment.  I

22  think jurisdiction would be in the Bankruptcy Court at that

23  point and there wouldn't be a thing anybody could do about it.

24      What we could do under what I thought was the arrangement

25  that the Court discussed with us was have the option of saying

1    fine, then we will reopen the case because the individuals will

2    otherwise have gotten an unconditional release today and our

3    best case is against the individuals -- we're giving that up.

4              THE COURT:  Mr. Stewart, if that happened wouldn't

5    the litigation go before the Bankruptcy Court anyway?

6              MR. STEWART:  Not as to the individuals. Oh, no.

7              THE COURT: I think so.  You're saying as to the

8    individual Defendants, individual officers.

9              MR. STEWART:  Correct.  So if what Mr. McGinnis is

10   saying is that just for making the  --

11             THE COURT: (Interjecting) So you think that they

12   would sever the case?  Because I mean Highland Park is a party.

13   So to the extent that Highland Park is a party, you think that

14   the litigation against Highland Park would go to bankruptcy,

15   but the litigation against individual officers would stay in

16   this court?

17             MR. STEWART: It might, and the worst thing that could

18   happen is that somebody could say, Mr. Stewart, take your

19   choice. If you're going -- (Tape blank) Try to have your cake

20   and eat it to and have your claim against the City and against

21   the individuals, then you're going to do it in one court.

22   Maybe it's going to be bankruptcy; maybe it's going to be here.

23   At least then we have the option of saying fine, Highland Park

24   is in bankruptcy, we have gotten a couple of payments from

25   them, we'll dismiss them and just go to trial against the

 1    individuals.  But what I worry about is that I think that Mr.

 2    McGinnis is saying that just by making a promise today without

 3    dime one being paid, just by making the promise he's buying an

 4    unconditional irrevocable release --

 5             THE COURT: (Interjecting)  That is absolutely not

 6    what he said and I asked him about that and he said that was

 7    not his intention.  His intention was that if Highland Park

 8    does not fulfill its end of the bargain, then the case would be

 9    able to be reopened against all of the Defendants.

10        What I'm hearing the new wrinkle is if Highland Park has

11    made two payments but not a third, then what happens?  That's

12    what I'm hearing.  But I specifically asked Mr. McGinnis

13    whether he was saying by entering into this Agreement this was

14    a release of all of the officers and that if they didn't pay,

15    that there would be no recourse against the officers, and Mr.

16    McGinnis said to me no, his understanding would be that the

17    case would be allowed to be reopened period against all of the

18    Defendants.  Mr. McGinnis, is that accurate?

19             MR. McGINNIS: I thought, Your Honor, that if there

20    are two payments made --

21             THE COURT: (Interjecting) I'm not talking -- now like

22    I said, this is a new wrinkle.  I'm just trying to -- we had a

23    discussion about if Highland Park did not pay whether entering

24    into this Agreement would release the officers, and you said

25    no, that's not what you intended.

```
 1                MR. McGINNIS:  No.

 2                THE COURT: If the case is reopened, it would be

 3     reopened against all the Defendants.  Is that accurate?

 4                MR. McGINNIS:  That is correct, but reopened to

 5     enforce the settlement, not carte blanche to pursue all claims

 6     against all individuals.  That we have a Settlement Agreement

 7     of $110,000.  If they're paid 70 or $80,000, then their

 8     collection against the City or against the officers, et cetera

 9     would only be for that third amount that everybody -- all of

10     the Defendants would get credit for the two payments made and

11     the recovery would be the settlement amount.  What I hear Mr.

12     Stewart saying is that it is reopened and  --

13                THE COURT: (Interjecting) Okay, let me ask you this.

14     If, if -- under the terms of the Settlement if Mr. Stewart has

15     to reopen the case to enforce the Settlement, is it your

16     position that he could only enforce that against the City of

17     Highland Park or he could enforce it against any Defendant?

18                MR. McGINNIS:  It's a global Settlement, so I presume

19     --

20                THE COURT: (Interjecting) Is what --

21                MR. McGINNIS:  -- It would be against all of the

22     Defendants.

23                THE COURT: So -- okay.  That's what I'm trying to

24     figure out.

25                MR. McGINNIS:  Yes.
```

1          THE COURT:  Mr. Stewart, do you understand that?  So

2     if the case has to be reopened to enforce the Settlement, then

3     you could enforce the Settlement against the individual

4     officers as well as the City of Highland Park.

5          MR. STEWART:  That had not been my thought, but I

6     think that that's something that I'll just need a split second

7     to get my clients to agree to.  Let me make sure I understand

8     what this would be.  Ultimately what we're agreeing to is the

9     equivalent of a joint and several settlement in Judgment.  We

10    won't enter it as a Judgment because we'll enter it as a

11    settlement, right?  But if we have to reinstate the case, then

12    my understanding is we would then be entitled to enter a

13    Judgment for the balance remaining, giving full credit for

14    payments that have already been received, but we can enforce

15    that Judgment against any and all Defendants jointly and

16    severally.  That I can recommend to Mr. Greer.

17         THE COURT: Really to be honest with you, I mean

18    that's a typical settlement.  So you can certainly talk to Mr.

19    Greer and Mr. Lawrence about it, but that is -- that would be

20    the general -- that would make the settlement a typical

21    settlement.

22         MR. STEWART:  Let me just step back.  Yes, Your

23    Honor, that would be our understanding; that if there were a

24    default we could reopen for the purpose of collecting the

25    difference between what was promised to be paid and what has

1    been paid and we could enforce against any and all Defendants

2    jointly and severally.

3                 THE COURT:  Mr. McGinnis.

4                 MR. McGINNIS:  That's my understanding.

5                 THE COURT: Okay, thank you.  Are there any other

6    terms of the Agreement that need to be placed on the record?

7                 MR. STEWART:  Only one, Your Honor.  Mr. McGinnis did

8    point out to me that things happen sometimes with Council.

9                 THE CLERK OF THE COURT:  Would you speak closer to

10   the mic?

11                MR. STEWART:  I have agreed on behalf of the

12   Plaintiffs that such a delay would not itself be a breach of

13   our Agreement provided that once it was approved we're on the

14   original schedule of October, February and May.

15                THE COURT: Okay.  Mr. McGinnis.

16                MR. McGINNIS:  Correct.

17                THE COURT: All right.  Okay.  Mr. Greer, will you

18   approach the microphone please?  Did you take part in the

19   settlement negotiations today?

20                MR. GREER:  Yes, I did.

21                THE COURT: Did you hear the Court explain the

22   possible outcomes of going forward with the litigation and not

23   settling, which would include you possibly getting a big award

24   from a jury, getting a little award from a jury or getting a no

25   cause from a jury?

 1              MR. GREER:  Yes.

 2              THE COURT: And we talked about the possibility that

 3      litigation could linger for years if you did not agree to the

 4      settlement?

 5              MR. GREER:  Yes.

 6              THE COURT: Having waived all of the considerations

 7      and including the possible outcomes, is it your decision to

 8      agree to the settlement that you heard discussed on the record

 9      today?

10              MR. GREER:  Yes.  Yes, it is.

11              THE COURT: Are you satisfied with the representation

12      that Mr. Stewart has provided you?

13              MR. GREER:  Yes, I am.

14              THE COURT: Do you understand that by agreeing to this

15      settlement you are agreeing to a dismissal of your Complaint

16      against the Defendants with prejudice, meaning that you could

17      not bring the same Complaint or any claims arising out of the

18      same event in another case?

19              MR. GREER: Yes, that's correct.

20              THE COURT:  Mr. Stewart, do you have other questions?

21              MR. STEWART:  We also have Mr. Lawrence.

22              THE COURT:  I understand.  I'm just trying to finish

23      with Mr. Greer.  Mr. McGinnis, do you have questions?

24              MR. McGINNIS:  I would just ask whether or not you

25      have discussed this case and your settlement posture with your

1    wife and your children?

2          MR. GREER:  No, not as of yet.  Me and my wife, we

3    have discussed anything future possibilities, but nothing that

4    -- nothing concrete.

5          MR. McGINNIS:  I know you haven't discussed the terms

6    of it because we just arrived at the terms, but have they

7    authorized you to enter into a settlement on their behalf?

8          MR. GREER:  Yes, they have.

9          THE COURT: And you represent to the Court that you've

10    been authorized and you stand before the Court representing

11    yourself and your family relative to this settlement?

12          MR. GREER:  Yes, that's correct.

13          MR. McGINNIS:  I have nothing further.

14          THE COURT: Thank you.  Mr. Lawrence, will you come

15    forward please?  Mr. Lawrence, did you also take part in the

16    settlement negotiations today?

17          MR. LAWRENCE:  Yes, Your Honor.

18          THE COURT: Did you hear about the possible outcomes

19    if you did not agree to the settlement?

20          MR. LAWRENCE:  Yes, Your Honor.

21          THE COURT: Having weighed all those considerations,

22    is it your decision to agree to the settlement that you heard

23    described in the record today?

24          MR. LAWRENCE:  Yes, Your Honor.

25          THE COURT: Are you satisfied with the representation

1   of Mr. Stewart?

2           MR. LAWRENCE:  Yes, Your Honor.

3           THE COURT: And do you understand that by agreeing to

4   this settlement any claim that you have brought against the

5   City of Highland Park and the police officers will end any

6   claim that you could have brought out of the same event that

7   led to you participating in this Complaint, you're agreeing to

8   dismiss that with prejudice?

9           MR. LAWRENCE:  Yes, Your Honor.

10          THE COURT:  Mr. Stewart, any other questions?

11          MR. STEWART:  Mr. Lawrence, do you understand that

12   the allocation of the settlement proceeds will be used

13   (Inaudible -- too far away from microphone).  Do you understand

14   ordinarily family members are able every once in a while

15   (Inaudible).  Do you understand if that happens (Inaudible)

16          MR. LAWRENCE:  Yes.

17          THE CLERK OF THE COURT:  Mr. Stewart, can you move a

18   little closer?

19          MR. STEWART:  -- Who is entitled to what out of the

20   settlement can make a binding decision, if the family

21   (Inaudible).

22          MR. LAWRENCE:  Yes.

23          MR. STEWART:  Your Honor, I've dealt with this family

24   a couple years.  I would be shocked (Inaudible)

25          THE COURT: Thank you.  Mr. McGinnis, do you have some

```
 1   questions?

 2              MR. McGINNIS:  Yes.  Mr. Lawrence, you appreciate

 3   that this is a settlement between you, the City of Highland

 4   Park and these Highland Park police officers?

 5              MR. LAWRENCE:  Yes.

 6              THE COURT: And there's been no allocation of an

 7   amount to you specifically and should you have a disagreement

 8   with your family, you can't come back against the City of

 9   Highland Park or any of these police officers?

10              MR. LAWRENCE:  Yes.

11              MR. McGINNIS:  That this is a complete and final

12   settlement subject to the limitations we put on the record

13   between you, the City of Highland Park and these police

14   officers?

15              MR. LAWRENCE:  Yes.

16              MR. McGINNIS:  That's all.

17              THE COURT: Thank you.

18              MR. STEWART:  Your Honor, does the Court have any

19   requirement as to how quickly we can (Inaudible).  Perhaps we

20   should have on the record who will take the first shot at

21   (Inaudible).

22              THE COURT:  Let me first ask, Mr. Greer.  Thank you,

23   Mr. Lawrence.  Mr. Greer, I just want to make sure that it's on

24   the record.  Do you also agree that if there are any disputes

25   among your family members regarding the allocation of the
```

1  settlement proceeds, that the Court will have the authority to

2  make that decision?

3              MR. LAWRENCE:  Oh, of course.

4              THE COURT: Thank you.  And Miss Square.

5              MS. SQUARE: Yes, Your Honor.

6              THE COURT: Did you participate in the settlement

7  discussions today?

8              MS. SQUARE: Yes, I did.

9              THE COURT: And you also heard about the different

10  outcomes that could occur if this case went forward to trial?

11              MS. SQUARE: Yes, Your Honor.

12              THE COURT: With all of those considerations in mind,

13  did you agree to approve the total settlement for 110,000 with

14  the three installments that have been discussed in the other

15  terms?

16              MS. SQUARE: Yes.

17              THE COURT: Are you satisfied with the representation

18  of Mr. McGinnis?

19              MS. SQUARE: I am.

20              THE COURT: Thank you.

21              MS. SQUARE: Thank you, Your Honor.

22              THE COURT: So Mr. Stewart and Mr. McGinnis, have you

23  talked about who would be responsible for the initial draft of

24  the Settlement Agreement?

25              MR. McGINNIS:  We have not.  I will take the

```
 1   responsibility of getting it to Mr. Stewart by Friday.

 2            MR. STEWART:  That's agreeable.

 3            THE COURT: I do want to make a record of what I told

 4   both of you.  There are some outstanding matters that might

 5   need Court involvement.  At this juncture, I don't have

 6   jurisdiction to consider those.  They will go to Judge Levy and

 7   certainly I'm not trying to discourage you from taking those

 8   matters to Judge Levy.  If you wanted me to have the

 9   jurisdiction to address those, then I would need both parties

10   to provide a Consent to Judge Levy to me entering final

11   Judgment.  But again, that's a decision for all of you -- for

12   you all to make, not for me.

13            MR. STEWART:  Understood, but I have had an

14   opportunity to consider this matter and for the Plaintiffs we

15   would be happy to have either Your Honor or Judge Levy handle

16   it, whichever the City is willing to agree to and it's somewhat

17   more convenient for the parties I know if the Court is doing it

18   because you're here, Judge Levy is in Ann Arbor, but I have no

19   preference.  Mr. McGinnis, if you prefer to have Judge Levy,

20   that's fine.

21            MR. McGINNIS:  I would have no problem with this

22   Court handling that matter, Judge.

23            THE COURT: There are consent forms that you can get

24   from the Court's Internet.  That would have to be presented to

25   Judge Levy and Judge Levy would have to sign off on it.
```

1          MR. McGINNIS:  Yes, Your Honor.

2          THE COURT: All right.  Anything else before we close

3     the record today?

4          MR. STEWART:  I want to thank the Court for its

5     efforts today.  I don't know that we would have reached an

6     agreement without the help and participation of the Court.

7          THE COURT: Well, I thank all of you.

8          MR. McGINNIS:  Thank you, Your Honor.  I appreciate

9     your effort.

10          THE COURT: Thank you.  Have a good afternoon.

11          THE CLERK OF THE COURT:  All rise.  Court is in

12     recess.

13               **(Proceedings adjourned at about 1:22 p.m.)**

14                         - - -

15               **COURT REPORTER'S CERTIFICATION**

16

17     STATE OF MICHIGAN)

18                    )  SS.

19     COUNTY OF WAYNE  )

20

21     I, Janice Coleman, Federal Official Court Reporter, in and

22     for the United States District Court for the Eastern District

23     of Michigan, do hereby certify that pursuant to Section 753,

24     Title 28, United States Code, that the foregoing is a true and

25     correct transcript of the digital sound recording, transcribed

 1    to the best of my ability, which was held in this matter and

 2    that the transcript page format is in conformance with the

 3    regulations of the Judicial Conference of the United States.

 4                          /S/ JANICE COLEMAN

 5                          JANICE COLEMAN, CSR NO. 1095, RPR

 6                          FEDERAL OFFICIAL COURT REPORTER

 7

 8    DATED:  October 25,  2018

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25