UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HASKELL G. GREER, *et al.*,

      Plaintiffs,          Case No. 15-12444
                               Honorable Judith E. Levy
v.                           Magistrate Judge Elizabeth A. Stafford

CITY OF HIGHLAND PARK,
*et al.*,

      Defendants.
_____/

**ORDER SANCTIONING DEFENSE COUNSEL FOR UNREASONABLY
AND VEXATIOUSLY MULTIPLYING PROCEEDINGS BY HIS CONDUCT
<u>RELATING TO THE PARTIES' SETTLEMENT EFFORTS</u>**

### I.    Introduction

Plaintiffs Haskell Greer, Kim Greer, Ashley Greer, Catera Greer,

Kailaa Greer and Alexander Lawrence filed this lawsuit under 42 U.S.C. §

1983 against Defendants City of Highland Park, Chief Kevin Coney,

Sergeant Ronald Dupuis II, William Melendez, Brian Shafer, Eric Taylor,

Charles Gardner, Jeremiah Hall, James McMahon, Hollis Smith, Allison

Askia, Christopher Zeullig, Tyrell White, and Heather Holcomb.  [ECF No.

26].  Kailaa is Haskell and Kim's minor child.  [*Id.*, PageID.305].

In August 2018, the Court held a settlement conference and the

parties agreed to a settlement.  Two months later, plaintiffs moved to

1

enforce the settlement, and the Honorable Judith E. Levy referred the motion to this Court.  [ECF Nos. 71, 75].  On January 7, 2019, the Court held a hearing on the motion and on an order for defense counsel to show cause why he should not be sanctioned for unreasonably and vexatiously multiplying proceedings by his conduct related to the parties' settlement efforts.  [ECF No. 90].  At the hearing, the Court found that McGinnis should be sanctioned under 28 U.S.C. § 1927, and the parties agreed that a sanction of $900 is reasonable.[1]  The reasons for sanctioning McGinnis are described below.

## II.   Background

The Court's settlement conference notice instructed that **"[i]ndividuals with full settlement authority shall be personally present at settlement conferences**. . . .  For the defendant(s), 'full settlement authority' is defined as the full relief requested in the lawsuit and/or the relief requested by the last settlement demand."  [ECF No. 58, PageID.600 (emphasis in original)].  The parties appeared for the settlement conference on August 29, 2018 and negotiated from about 10:00 a.m. to about 1:00 p.m.  [*See* ECF No. 77, PageID.1071-72].

---

[1] A separate report and recommendation will be filed on the motion to enforce the settlement.

McGinnis appeared "on behalf of Defendants," and City Administrator Kathy Square was represented as having "authority to enter into a Settlement Agreement." [*Id.*, PageID.1071].

The parties agreed to a settlement of $110,000 for all plaintiffs to be paid in three installments on the 15th day of October 2018 and February and May of 2019. [*Id.*, PageID.1073]. McGinnis noted that "only the City Council can bind the municipality to a contract, so [ ] this Settlement is subject to Council approval." [*Id.*]. But he also said that Square had authorized him to enter into the agreement and that he understood "that the Council will meet some time in September and we would then get word of whether or not they have approved the settlement." [*Id.*]. McGinnis continued, "We will enter into a Release and Settlement Agreement with the Plaintiff which will incorporate the terms of the settlement as put on the record." [*Id.*].

There was significant discussion about what would happen if the City did not fulfill its obligations under the settlement. Plaintiffs' counsel, Jeffrey Stewart, described the "overall objective" of the parties "to provide protection to the individual Defendants by having them included in the settlement and the release, but also preserve the Plaintiffs' rights against all Defendants in the event the City was unable or unwilling to live up to its

3

obligations." [ECF No. 77, PageID.1074].   McGinnis agreed that, if the

case had to reopened, it would be reopened against all the defendants,

"but reopened to enforce the settlement, not carte blanche to pursue all

claims against all individuals." [*Id.*, PageID.1079].  Stewart then

summarized the discussion:

> Ultimately what we're agreeing to is the equivalent of a joint and several settlement.  We won't enter it as a Judgment because we'll enter it as a settlement, right?  But if we have to reinstate the case, then my understanding is we would then be entitled to enter a Judgment for the balance remaining, giving full credit for payments that have already been received, but we can enforce that Judgment against any and all Defendants jointly and severally. . . .  [I]f there were a default we could reopen for purposes of collecting the difference between what was promised to be paid and what has been paid and we could enforce against any and all Defendants jointly and severally.

 [*Id.*, PageID.1080-81].  McGinnis responded, "That's my understanding."

[*Id.,* PageID.1081].

The Court asked counsel if there were any other terms to be placed

on the record.  [*Id.*].  Stewart responded that, if the approval from the city

council was delayed, he agreed "that such a delay would not itself be a

breach of our Agreement provided that once it was approved we're on the

original schedule of October, February and May."  [*Id.*].  After the terms of

the settlement were fully described, Square confirmed her agreement to it.

[*Id.*, PageID.1086].

4

The parties also addressed the fact that one of the plaintiffs who would receive payment from the settlement proceeds is a minor child. Stewart stated that he was unsure of whether he would need to obtain approval of the amount of the settlement allocated to the minor child through this Court or through Oakland County Circuit Court; if the latter, a conservatorship would need to be established.  [*Id.*, PageID.1072, 1074]. McGinnis raised no concern at that point about moving forward with the settlement agreement pending approval of the settlement and the establishment of conservatorship.[2]

After all parties agreed to the terms of the settlement, McGinnis agreed to forward a draft of a written settlement agreement, and he did so two days later.  [*Id.*, PageID. 1086-87; ECF No. 73-2; ECF No. 73-3].  But on September 6, 2018, McGinnis sent Stewart a letter stating that there were two issues with the settlement.  First, he asserted that a next friend

---

[2] Research conducted after this hearing reveals that it is this Court, and not a state court, that must approve the settlement of the minor child under Federal Rule of Civil Procedure 41(a)(1)(ii).  *See Green v. Nevers*, 111 F.3d 1295, 1302 (6th Cir. 1997) (upholding district court's decision to reduce contingency fee in settlement involving minor child); *Kiel by Kiel v. Barton*, No. 09-CV-15053, 2011 WL 13206189, at *1 (E.D. Mich. Jan. 31, 2011) (declining to rely on Michigan Court Rule 2.420 because federal rules applied to approval of a settlement of a minor in federal court); *Hertz v. Miller*, No. 07-14369, 2011 WL 4433763, at *1 (E.D. Mich. Sept. 21, 2011) (requiring parties to file motions to approve settlement because settlement involved a minor child).

5

had to be appointed because the minor child did not have capacity to sue, but he said that he had "authority to stipulate to a Next Friend."[3]  [ECF No. 75-2].  McGinnis also noted that a court would need to approve the portion of the settlement apportioned to the minor child; he presumed that would be Oakland County Probate Court.  [*Id.*].

McGinnis secondly asserted, "[W]e had a provision of settlement that allows you (your clients) to collect against the individual officers if Highland Park defaults on payments.  The individual officers have not consented to collections against them.  The City of Highland Park has."  [*Id.*].  Plaintiffs' counsel responded to McGinnis's letter by agreeing that a conservatorship was needed.  But he correctly noted that the ability to enforce the

---

[3] Defendants are mistaken in this regard, as Federal Rule of Civil Procedure 17(c) allows a parent to sue on a child's behalf.  *See In re Brooks*, 583 B.R. 443, 444–45 (Bankr. W.D. Mich. 2018) ("Because Mr. Bucceri may sue on behalf of his minor daughter as her parent without resort to any appointment as next friend or guardian ad litem under Fed. R. Civ. P. 17(c)(2), the court will deny the Next Friend Petition as unnecessary."); *Communities for Equity v. Michigan High Sch. Athletic Ass'n*, 26 F. Supp. 2d 1001, 1006 (W.D. Mich. 1998) ("This contention is defeated by Federal Rule of Civil Procedure 17(c), however, which provides that a general guardian may sue on behalf of a minor. A parent is a guardian who may so sue."); *Bender v. Metro. Nashville Bd. of Educ.*, No. 3:13-CV-0470, 2013 WL 3777197, at *3 (M.D. Tenn. July 18, 2013) ("Under Rule 17(c) of the Federal Rules of Civil Procedure, a parent or guardian may bring suit on behalf of his or her minor child."); *Cavanaugh ex rel. Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 755 (6th Cir. 2005) (under Rule 17(c), parents "may sue or defend on their minor child's behalf," but not *pro se*).

settlement against all of the defendants was a condition of the settlement. [ECF No. 75-3, PageID.1067].

Subsequently, through Stewart, the minor child's father, Haskell Greer, filed a petition to be appointed as her conservator and for approval of an allocation of $20,000 to the minor child from the settlement proceeds. [ECF No. 88, PageID.1802].  Stewart states that he sent McGinnis a courtesy copy of the petition because McGinnis had raised a concern about securing approval of the settlement.  But at the January 7 hearing, both Stewart and McGinnis stated that McGinnis objected to the probate court approving the settlement on behalf of the minor child.  McGinnis told the court that the City had not agreed to a settlement.  The probate court appointed Haskell as his minor daughter's conservator but did not approve of the settlement on behalf of the child because of McGinnis's objection. [4] And despite the parties' settlement, defendants moved to dismiss for insufficient process and statute of limitations.  [ECF No. 83].

Plaintiffs have moved for sanctions under Federal Rule of Civil Procedure 11 and Section 1927 based on defendants' belated filing of their

---

[4] As noted in footnote 2, it is this Court that must approve the settlement on the minor child's behalf.

motion to dismiss.  [ECF No. 88].  Defendants have yet to address that motion, and the Court will hear it separately from the January 7 hearing.

What the Court did consider at the January 7 hearing was whether to order McGinnis to reimburse plaintiffs for their reasonable expenses incurred during the settlement conference and in subsequent attempts to finalize the settlement agreement.

## III.   Analysis

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  This rule is designed "to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios, Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006). Section 1927 sanctions do not require a showing of bad faith.  *Knopf v. Elite Moving Sys.*, 677 F. App'x 252, 257 (6th Cir. 2017).  Instead, they "are warranted when an attorney objectively falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* (citations and internal quotation marks omitted).  Section 1927 sanctions "require a showing of

8

something less than subjective bad faith, but something more than negligence or incompetence." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 396 (6th Cir. 2009).

McGinnis's was required to treat the settlement conference and agreement as "solemn obligations" and "to make every reasonable effort to see that the agreed terms are fully and timely carried out." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976); *Zwerin v. 533 Short N. LLC*, 568 F. App'x 374, 375 (6th Cir. 2014). He has fallen well short of these obligations.

First, McGinnis appeared at the settlement conference representing all of the defendants, but then sent a letter on September 6 indicating that the individual defendants would not agree to the settlement. The Court instructed that parties with settlement authority must attend settlement conference. If McGinnis lacked authority to settle on behalf of the individual defendants, it was his duty to ensure that they appeared for the settlement conference. If the individual defendants gave McGinnis settlement authority but later balked at the agreement, that would have put McGinnis is a difficult position. Still McGinnis's apparent authority to negotiate on behalf of the individual defendants means that the settlement agreement is binding. "In Michigan, attorneys are considered to have the

9

apparent authority to settle lawsuits on behalf of their clients, and opposing parties have the right to rely upon the existence of such settlements when agreed to by attorneys." *Auramet Int'l, LLC v. C.R. Metals*, No. 16-CV-11177, 2017 WL 2959418, at *2 (E.D. Mich. June 12, 2017) (citing *Capital Dredge & Dock Corp. v. City of Detroit*, 800 F.2d 525, 530–31 (6th Cir. 1986)).

McGinnis referred to the settlement agreement as being only "tentative"; he argued that the intent of the parties was that they would be bound only when a signed agreement was finalized.  This argument is factually inaccurate in that the reduction of the agreement to writing was not a part of the terms of the agreement described on the record.  Instead, the discussion about McGinnis providing the initial draft of the written settlement was a housekeeping matter addressed at the end of the settlement conference, well after the terms of the agreement were placed on the record.  [ECF No. 77, PageID.1081, 1086-87].

And McGinnis's argument is legally unsustainable because it is well settled that "[t]here is no requirement that a settlement agreement be reduced to writing to be enforceable." *Glen Elec. Holdings GmbH v. Coolant Chillers*, Inc., No. 1:10-CV-1109, 2013 WL 2407613, at *8 (W.D. Mich. May 31, 2013).  *See also Auramet Int'l, LLC*, 2017 WL 2959418 at *2

10

("The validity of this agreement is not undermined by the fact that the written settlement agreement remains unsigned.").

The Court is also concerned about McGinnis's efforts to frustrate plaintiffs' attempts to finalize the settlement. In his September 6 letter to Stewart, McGinnis expressed concern that court approval was required needed to finalize the settlement on behalf of the minor child. McGinnis (mistakenly) assumed that the Oakland County Probate Court would need to provide the approval. But he then appeared at the probate hearing to object to the approval of the settlement, and also moved to dismiss plaintiffs' complaint in this Court. McGinnis actively took steps to frustrate the completion of the settlement agreement and, if they were successful, he would have wasted the time and effort of this Court and plaintiffs in negotiating the agreement.

Based on this conduct, the Court finds that McGinnis fell well short of his solemn obligation "to make every reasonable effort to see that the agreed terms are fully and timely carried out." *Aro Corp.,* 531 F.2d at 1372; *Zwerin,* 568 F. App'x at 375. Making matters worse, McGinnis was intransigent during the January 7 hearing. He repeatedly argued that the agreement was not binding until it was reduced to writing despite the Court citing opinion and after opinion to the contrary. McGinnis emphasized that

11

he sent Stewart a draft of the written settlement agreement and that the
plaintiffs did not return an executed copy.  But a few days after sending
Stewart the draft agreement, McGinnis sent a letter to Stewart that would
remove an essential term of the agreement placed on the record.
McGinnis refused to acknowledge that, because of this sequence of
events, he was responsible for the parties' inability to finalize the
settlement.  This is but one example of the unfounded accusations that
McGinnis made about Stewart.

McGinnis also cast aspersions on the Court, defensively accusing the
undersigned of being unfair and biased.  He is entitled to his opinion.  But
McGinnis's effort to defend himself by blaming Stewart and the Court does
not give confidence that he will treat future settlement conferences and
agreements with the necessary solemnity.  A Section 1927 sanction is
warranted to deter the tactics he has used before this Court.

## IV.    Conclusion

McGinnis raised a due process argument near the end of the hearing,
and the Court invited him to file a request for furthering proceedings, but he
ultimately stipulated that he would pay $900.00 in sanctions to plaintiffs'
counsel without an objection or further proceedings.  Plaintiffs' counsel
asserted that the attorney's fees and costs to them as a result of their

12

efforts to enforce the settlement exceeded $900.00, but they too agreed to settle the issue for that amount.

The Court therefore **ORDERS** McGinnis to pay plaintiffs **$900.00** for his actions in unreasonably and vexatiously multiplying the proceedings as it relates to the settlement agreement by **January 25, 2019**.  This Order does *not* settle plaintiffs' motion for sanctions resulted from the filing of defendants' motion to dismiss, [ECF No. 88]; any sanctions ordered because of that motion will be in addition to the sanctions ordered here.

**IT IS SO ORDERED.**

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 9, 2019

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of 14 days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 9, 2019.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
